*3
ORDER GRANTING PETITIONER’S MOTION FOR SUMMARY JUDGMENT

Chief Justice KEEN.
This is an appeal by Gerald Cantrell of his termination by Cherokee Nation Enterprises, Inc. (“CNE”), a tribal corporation wholly owned by the Cherokee Nation.
This Court has Jurisdiction to hear this ease, pursuant to Article XII of the Constitution.[1]
*4 On February 3, 1997, the Respondents terminated the Petitioner following an executive session of the Board of Directors,
The Board of Directors consisted of Bill John Baker and Charles “Chuck” Hoskin, both current members of the Cherokee Nation Tribal Council, Principal Chief Joe Byrd, Jennie Battles, the current Secretary-Treasurer of the Cherokee Nation and Jerry Holderby, an employee of Boatmen’s Sank in Tahlaquah.
After the Petitioner changed attorneys and filed a now petition on February 19, 1997, as ordered by the Court, the Respondents filed them answer on March 3, 1997.(1)
In his petition, Gerald Cantrell alleged that he had not offered his resignation during an executive session of CNE, but instead had been fired. The Respondents allege that he had indeed offered his oral resignation and that it had been accepted by the board following the executive session. The Respondents argue that since there was no firing, this Court does not have jurisdiction.
The Petitioner further alleges that on the day in question, the Board of Directors was illegally constituted and therefore, everything that happened during the February 3, 1997, board meeting was a nullity.
Because the question, of whether or not the Board of Directors of Cherokee Nation Enterprises was legally constituted on the day in question, is a threshold question, and because it appears that this is a purely legal question, this Court ordered the Petitioner to file a motion for summary Judgment by March 25, 1997, and the Respondents to file a response by March 31, 1997. Both pleadings are now on file.

ARGUMENT AND FINDING

The Petitioner, Gerald Cantrell, argues five different propositions in his Motion for Summary Judgment. Each have been responded to by the Respondents. This Court will restate each of them, in the order argued, and make findings accordingly. (2)

PROPOSITION I

WAS THE BOARD OF DIRECTORS'OF CHEROKEE NATION ENTERPRISES INCAPABLE OF TAKING ANY ACTION ON FEBRUARY 3, 1997, DUE TO BEING ILLEGALLY CONSTITUTED?
If they were legally constituted, then whatever action they took that day, that was otherwise within the law and the scope of their duties, was valid.
If they were not legally constituted, the Petitioner argues, no action could have been taken for a lack of a quorum, pursuant to Title 18, S 36 CNCA.
The Respondents argue that the board was legally constituted and that their actions were legal.
WE AGREE WITH THE PETITIONER AND HOLD that if a majority of the individual members of the board, wore illegally sitting, then there was not a quorum, and therefore any action purported to have been taken that day was a nullity.

PROPOSITION II

DID JERRY HOLDERBY HAVE A CONFLICT OF INTEREST ON THE DAY IN QUESTION, DUE TO HIS EMPLOYMENT WITH BOATMEN’S BANK, THAT RENDERED HIS POSITION AS A BOARD MEMBER A NULLITY?
The Petitioner argues that Mr. Holderby, an employee of Boatmen’s Bank in Tahlequah, by serving as a CNE board member, violated the conflict of interest policy of CNE and also 28 CNCA § 4 subparts H, I and J, and Article X § 10 of *5 the Constitution of the Cherokee Nation. (3)
The Respondents contend that Mr. Holderby was not in violation of any laws or policies, and that his service as a board member was legal.
They argue that simply because Mr. Holderby was employed by a bank that had loaned money to CNE, he was not disqualified from serving as a board member. They attached an affidavit from Mr. Holderby that says in essence, that the accounts that CNE has with his employer, Boatmen’s Bank, exist only because of several bank acquisitions that involved his bank, and that he had nothing to do with acquiring those accounts, nor did he personally profit from the accounts. No mention is made, however, to any dividends, stock options, bonuses, promotions, etc., that Mr. Holderby might have or received by virtue of his employment with the bank, or how they might or might not be tied to any accounts involving CNE.
The conflict of interest policy of Cherokee Nation Enterprises, attached to Petitioner’s motion as Exhibit “C” states in part:
No employee or official shall directly or indirectly maintain any outside business or employment, or engage in any outside business or financial activity which conflicts with the interest of the Cherokee Nation Outpost, Inc., or which interferes with the discharging of its d/uty (emphasis added by Court).
Article X, Section 10, of the Constitution reads as follows:
No official, member or officer of the Council, cabinet member, employee of any official, Council, cabinet, or subdivisions thereof, or any person employed in any capacity by the Cherokee Nation shall receive from any individual, partnership, corporaticm, or entity doing business with the Cherokee Nation directly or indirectly, any interest, profit, benefit or gratuity, other than wages, salary, (4) per diem, or expenses specifically provided by law.
It is clear that the Constitution and the policies of Cherokee Nation Enterprises, Inc. are designed to prohibit any employee of the tribe (CNE) from serving in any capacity where a conflict of interest exists.
Notwithstanding the affidavit filed herein by Mr. Holderby, this Court sees many areas and circumstances whereby the interests of CNE and of Boatmen’s Bank would be in conflict. If their interests were in conflict, so would the interests of Mr. Holderby.
A healthy cash flow situation is vital to any business such as CNE, and that is important to lenders also. However, which road to travel in order to achieve or maintain a healthy cash flow could be drastically different in the eyes of the lender as opposed to the eyes of the company.
When, whether, how much, and under what conditions to borrow money is one example. When, how much and under what conditions should a loan be repaid is another. The amount, place and conditions of deposits is another area where a conflict of interest could easily arise for Mr. Holderby. We think that the possibility of a conflict arising between Mr. Hold-erby’s interests as a CNE board member, and his employment with Boatmen’s Bank is more likely to occur than to not occur and that the ill effects of this arrangement to the corporation outweighs any possible benefits.
WE THEREFORE HOLD that under the Constitution, and the CNE regulations, it is a conflict of interest, and therefore forbidden for Mr. Holderby, or any other employee of a lending institution (5) who does business with a tribal corporation to *6 serve as a board member for that corporation.
WE ALSO HOLD that this conflict of interest made his service on the day in question illegal.

PROPOSITION III

DOES TITLE 51, § 42 CNCA, FORBID THE SECRETARY-TREASURER, JENNIE BATTLES, FROM SERVING ON TNE BOARD OF DIRECTORS OF CHEROKEE NATION ENTERPRISES?
Gerald Cantrell argues that this cited statute prohibits the Secretary-Treasurer of the Cherokee Nation, Jennie Battles, from serving on the Board of Directors of Cherokee Nation Enterprises. Respondents, in a one paragraph response, deny that the statute cited forbids the Cherokee Nation Secretary-Treasurer from serving on the CNE Board of Directors. The statute is clear and on point.
The Secretary-Treasurer shall not, during his (her) term of office, accept of, or be elected or appointed to any other office or position of trust or profit, whereby he (she) may be prevented from exercising a uniform and uninterrupted supervision of his (her) office.
WE AGREE WITH THE PETITIONER AND HOLD that the Secretary-Treasurer of the Cherokee Nation is prohibited by Title 51, § 42 CNCA from serving on the Board of Directors of any and all tribal corporations.
The Secretary-Treasurer is responsible for carrying out many duties for the tribe, including some that are mandated by the Constitution. An example of some of these duties are:
1. The preparation of annual financial statements and a consolidated balance sheet for reflecting the results of operations of all tribal activities, all within sixty days after the end of the fiscal year. (6) Article X Section 3 Constitution of the Cherokee Nation.
2. Accepting all grants, donations, interests, judgments, etc. and to insure that the funds are used correctly and in accordance with the purposes for which they were donated. Article X Section 5 Constitution of the Cherokee Nation,
The position of board member of any tribal corporation is a position of trust. It is also a position of profit by virtue of the $200.00 salary received for attendance at each meeting.
The wisdom of this prohibition was made very evident recently during a meeting of the Tribal Council. CNE was purchasing some property from the tribe. The tribe had the property appraised and CNE had another appraisal that was substantially lower than the Tribe’s appraisal. CNE, where Jennie Battles serves on the board, was negotiating for the lower figure. Jennie Battles, the Secretary-Treasurer of the tribe, was the negotiator for the tribe, and for CNE. The conflict here is clear.
WE THEREFORE HOLD that the Secretary-Treasurer (currently Jennie Battles) of the Cherokee Nation is prohibited from holding the position of board member on any tribal corporation board by the provisions of Title 51, § 42 CNCA.

PROPOSITION TV

IS IT A CONFLICT OF INTEREST FOR TNE PRINCIPAL CHIEF OF THE CHEROKEE NATION TO OCCUPY A POSITION AS BOARD MEMBER ON THE BOARD OF A TRIBAL CORPORATION?
Cantrell argues that the Principal Chief cannot hold the office of board mem *7 ber of a tribal corporation because such a practice is fraught with the possibility of coercion and improper (7) transactions. He says it would be a conflict of interest for the Principal Chief to serve as a board member.
The Respondents disagree. They cite the fact that former Principal Chief, Wilma Mankiller, sat on the original board of directors of CNE. This sets a precedent, they argue. They also cite the provisions of Section 8.09 of the bylaws in support of their argument. However, they do not provide this Court with copies of the bylaws.
The Constitution of 1975 establishes the office of the Principal Chief, and grants to him the executive power of the Cherokee Nation. Since the adoption of the Constitution, the Cherokee Nation has steadily grown from a poor and weak tribe to one of the richest and most powerful Indian tribes in the United States. The annual budget of the Nation is enormous, and it funds the operation of scores of programs for the benefit of its members.
It is the duty of the Principal Chief to oversee the budget of the tribe to make sure it is being spent lawfully and wisely, and to insure that the tribe devises programs to meet the needs of its members.
In addition to the above duties, the Tribal Council has enacted many laws that direct or empower the Principal Chief to carry out certain functions. Among these are the provisions of Title 18, CNCA (LA 11-85, eff. June 8, 1985), as amended. Although LA 9&-16 repeals the old act, Section 3 provides that all rights vested by prior acts shall not be impaired, diminished or affected. (8)
These laws, among other things, grant the executive branch the power to charter corporations[2], appoint members to the board of directors of tribal corporations[3], and to determine the amount and disposition of surplus funds [4] of tribal corporations.
The statutes also grant the Principal Chief the right and the duty to inspect and audit the books and reports[5] of tribal cor *8 porations. A careful reading of these statutes relating to the role of Principal Chief, clearly establish that he has many powers relating (9) to tribal corporations, of which Cherokee Nation Enterprises, Inc. is one.
He may appoint members to the CNE board, but it says nothing about the Chief serving as a board member. He has great powers to determine what happens to the surplus funds of the corporations, but these powers must be exercised with the consent of the Board of Directors. This language suggests that the Council did not intend that the Principal Chief actually serve on the boards.
The same is true concerning the Chiefs power (and duty) to inspect the books and reports of the corporations. Why would the legislative branch go to the trouble to spell out these powers, if in fact, they intended for him to serve on the Board of Directors? Board members already have that power. We think that the legislative branch did not intend for the Chief to sit as a board member.
It is generally understood that a Board of Directors is made up of people who possess a degree of knowledge or skill involving the purpose for which the corporation was established. If the purposes is to make a profit, the board members should possess the skills and know-how to do just that ... make money. A Board of Directors is not for the purpose of carrying out a political agenda, nor does it exist for the purpose of rewarding campaign supporters.
WE HOLD that it is indeed a conflict of interest for the Principal Chief to sit on the Board of Directors of any tribal corporation, or any entity where he has the power of appointment. If the Chief had played a role in the daily decision making or the policy (11) making of the corporation, he (or she) would not feel obligated to exercise independent judgment in carrying out his mandated duties to oversee the corporation.
WE FURTHER HOLD that it was not the intent of the legislative branch, when enacting the provisions of Title 18 CNCA (corporations) that the Principal Chief should serve on the corporate boards authorized therein. Therefore, it is illegal for the Chief to serve on corporate boards.

PROPOSITION V

IS IT A VIOLATION OF THE SEPARATION OF POWERS PROVISION OF THE CONSTITUTION FOR COUNCIL MEMBERS TO SERVE ON CORPORATE BOARDS WHERE THE PRINCIPAL CHIEF HAS TNE POWER OF APPOINTMENT?
The Petitioner argues that indeed, the separation of powers provisions do prevent Council members from serving on the Board of Directors where the Principal Chief has the power of appointment. He cites Oklahoma cases in support of his arguments.
The Respondents disagree, and argue that the three branches of government must work together to serve the Cherokee people. They go on to argue that an Oklahoma case cited by the Petitioner has no application to the case at bar.
It does not matter what the state cases say on this point. The Cherokee Constitution governs this issue and it is the duty of the Tribunal to interpret its provisions.
The Constitution clearly grants the executive power to the Principal Chief (see Article V, § 1), and Title 18, § 11, CNCA empowers the executive branch the duty to charter and oversee corporations. As a part of this authority, the Principal Chief is granted the power to appoint the board members of said corporation.
*9 But the power to appoint board members must not violate the Constitution. The Constitution mandates that, where a responsibility is given to one branch, the members of the other two branches cannot exercise any authority in that area, including but not limited to, serving on the boards of tribal corporations, or other entities where the Principal Chief has the power of appointment.
The records before us reflect that the Council members were not just passive members of the CNE board on February 3, 1997. The minutes of the meeting, which are attached as Exhibit “A” to Petitioner’s brief, reflect that Council member Charles Hoskin was acting as chairman.
The motion to enter executive session with the Petitioner Gerald Cantrell was made by Council member Bill Baker and seconded by Jennie Battles; as was the motion to exit the executive session. It was during this meeting that the dispute arose as to whether Mr. Cantrell had resigned or not.
The motion to accept the alleged verbal resignation of Cantrell was made by Council member Bill Baker. (12)
The motion to re-enter is executive session with Mike Watkins was made by Bill Baker and seconded by Jennie Battles.
The motion to appoint Mike Watkins as interim CEO to replace Mr. Cantrell was made by Jennie Battles and seconded by Bill Baker.
These actions clearly reflect that the Council members present were clearly in violation of the separation of powers doctrine of our Constitution.
WE THEREFORE HOLD that Article IV of the Cherokee Nation Constitution prohibits Council members from serving on the Board of Directors of corporations or other entities when the power of appointment resides in the Principal Chief.

This Court, is aware that this decision may not be popular ■unth some members of the Tribal Council but the Constitution is dear in this matter and -we are sworn to uphold it. We also understand that some members might depend upon the income generated by serving on these boards. Our purpose is not to deprive anyone of income, but to uphold the Constitution,.

WE HAVE FOUND, SPECIFICALLY, that Joe Byrd, Chief, Jennie Battles, Secretary-Treasurer, Bill John Baker, Council member, Charlie (Chuck) Hoskin, Council member and Jerry Holderby, were all serving illegally on February 3, 1997. This means that not one parson out of five were serving legally. Needless to say, this does not amount to a quorum. THEREFORE, WE HOLD that any purported action taken by the illegal Board of Directors of CNE on February 3, 1997, is null and void.
THE PETITIONER’S MOTION FOR SUMMARY JUDGMENT IS GRANTED.
The Petitioner, Gerald Cantrell, is hereby reinstated to the position of CEO of Cherokee Nation Enterprises, Inc. All board positions of Cherokee Nation Enterprises, Inc are HEREBY DECLARED (13) VACANT. The Principal Chief IS HEREBY NOTIFIED of the five vacancies so that he may proceed to name new members to the board.
Mr. Cantrell is entitled to immediately re-assume the powers and duties of CEO of the corporation and Mr. Holderby, who is currently in the position, is ordered to immediately relinquish all authority as CEO to Mr. Cantrell, and to vacate the offices. We take note of the fact that the regulations of CNE forbid any members of the Board of Directors from being employed by CNE for a period of two (2) years. Mr. Holderby was not eligible to hold the position anyway.
*10 The Cherokee Nation Marshals, under the supervision of Pat Ragsdale, are directed to assist in this transition and to insure that it is carried out immediately and peacefully, if requested by the Petitioner herein. The Cherokee Nation Security Marshals, under the direction of Joe Fishinghawk are directed not to interfere with this changeover, and to assist in enforcing this order, if requested. The Court again reminds the Security Marshals that they are sworn by oath to obey the Cherokee Nation Constitution and MUST comply with the orders of the Court. We expect nothing less.
In order to insure that Cherokee Nation Enterprises will be able to function effectively during the time necessary for new board members to be nominated, background checks completed and confirmed, and to be brought up to speed by the staff, this Court will retain jurisdiction. Hopefully, the process can be completed within sixty (60) days. (14)
A hearing is hereby sat for Friday, June 6, 1997, at 10:00 a.m. to hear arguments as to whether or not the new board is ready to assume full responsibility. In the meantime, Mr. Cantrell is ordered to prepare a full and detailed financial report on the condition of CNE and to present it to the Court, and to the Tribal Council, as soon as possible.
Until that time, all actions that require board action will be presented to the Court for approval.
This Order shall have prospective application only, and shall have no retroactivity.
IT IS SO ORDERED on this 9th day of April, 1997.
ALL JUSTICES CONCUR.

. Looney, et al. v. Cherokee Nation Bingo Outpost. Inc., JAT 96-05.

. Title 18, S 11 CNCA § 11 Authorization. A. The Council of the Cherokee Nation hereby authorizes the executive branch of the Cherokee Nation to charter corporations. The Council may, from time to time, establish laws and regulations governing the activities of such corporations within the boundaries of the Cherokee Nation. B. A corporation chartered under this title shall be authorized to administer all commercial and financial transactions associated with the business of the corporation in such manner and to such extent as any corporation chartered by the State of Oklahoma, unless otherwise provided for by tribal law.

. Title 18, § 12(B) CNCA § 12 Board of directors. B. The board of directors shall be appointed by the Principal Chief of the Cherokee Nation and confirmed by the Council of the Cherokee Nation.

. Title 18, § 15 CNCA § 15 Disposition of surplus earnings. The Principal Chief, with the consent of the board of directors of the corporation, shall have the power to fix, from time to time, the amount to be received out of the surplus earnings of the corporation as working capital or for any other lawful purpose and to determine whether any, and if any, what part, of the surplus of the corporation shall be declared to revert to the General Fund of the Cherokee Nation or to such other funds as the board of directors may determine.

.Title 18, § 18 CNCA § 18 Inspection and auditing of books, records and reports. A. The accounts, books, and papers of the corporation shall be opened to inspection by the Principal Chief or his authorized representatives during regular business hours. B. The accounts and records of the corporation shall be audited at the close of each fiscal year, and copies of the audit shall be furnished to the Principal Chief, the Council, and to such other persons as the Principal Chief directs.